# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. English*, 2013 IL 112890

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SCOTT F. ENGLISH, Appellant. |
| | |
| Docket No. | 112890 |
| | |
| Filed | January 25, 2013 |
| Rehearing denied | April 18, 2013 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A postconviction claim that felony murder could not be predicated on aggravated battery of a child was forfeited where it had been available on direct appeal but was not raised there, even though this was before the Illinois Supreme Court held in *People v. Morgan*, 197 Ill. 2d 404 (2001), that the predicate felony underlying a felony-murder charge must have an "independent felonious purpose"—no ineffectiveness of appellate counsel. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Henry County, the Hon. Charles H. Stengel, Judge, presiding. |
| | |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Kerry J. Bryson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Terence Patton, State's Attorney, of Cambridge (Michael A. Scodro, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Thomas, Garman, and Theis concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justice Burke.

**OPINION**

¶ 1                                    I. BACKGROUND

¶ 2    Defendant, Scott F. English, was charged in the death of Jami Sue Pollock, the three-year-old daughter of his live-in girlfriend. He was charged with first degree (knowing) murder (720 ILCS 5/9-1(a)(2) (West 1994)), first degree (felony) murder predicated on aggravated battery of a child (720 ILCS 5/9-1(a)(3) (West 1994)), and aggravated battery of a child (720 ILCS 5/12-4.3(a) (West 1994)).

¶ 3    At his jury trial in the circuit court of Henry County, Dr. Violette Hnilica, a forensic pathologist, testified regarding Jami Sue's autopsy. Dr. Hnilica's external examination revealed many bruises on multiple parts of Jami Sue's body, including massive injuries to her head, back, and chest and scattered bruises on her arms and legs. The bruises were in various stages of healing. Jami Sue had severe, recent head injuries, including a swollen and bruised area on the back right side of her head covering an eight centimeter area of hemorrhage under her scalp. Dr. Hnilica characterized the hemorrhage as "massive" and testified that it was the result of "[h]eavy rapid force." She testified that blunt force trauma to the head contributed to Jami Sue's death.

¶ 4    Dr. Hnilica also found evidence that Jami Sue had been suffocated, which included broken capillaries (petechiae) in her eyes, abrasions on her nose, and dried lips. Dr. Hnilica also observed fingernail injuries Jami Sue had made to her own chest, consistent with her having struggled while something, like a pillow, had been held over her face. In Dr. Hnilica's expert opinion, it was unlikely that Jami Sue had accidentally suffocated herself in light of the fingernail marks. Dr. Hnilica concluded that asphyxiation also contributed to Jami Sue's death.

-2-

¶ 5	Investigator Sheri Ranos with the Illinois State Police testified that she interviewed defendant on October 11, 1995, the day after Jami Sue's death, at the Kewanee police department. In the initial interview, he claimed that at approximately 1 a.m. on October 10, 1995, he had come home from work and gone to check on Jami Sue and her brother Preston in the bedroom they shared. He found her tangled in her blanket and fixed the blanket. She cried for her mother, who briefly came into the room. At first, he claimed that at approximately 3:45 a.m., his son David woke him up, and he again went into Jami Sue and Preston's room, where he found her lifeless under her blanket. Given that the 911 call had been placed at 4:58 a.m., however, he changed his story, reasoning that he must have gone into the children's room at 4:30 a.m. He maintained that between 1 and 4:30 a.m., no one else had entered the children's room. He speculated that Jami Sue may have died of suffocation because she had rolled herself in her blanket and could not breathe.

¶ 6	Investigator Ranos told defendant that preliminary autopsy results indicated that Jami Sue had sustained injuries to her head, neck, and back. Defendant indicated that "he could probably shed some light on those injuries." He stated that during breakfast on October 7, 1995, he "inadvertently grabbed [Jami Sue] by the neck" when she ran past him, leaving a mark on her neck. He also indicated that on the same day, he was giving Jami Sue and David a bath when Jami Sue stepped on David, causing David to yell. He claimed that, in the commotion, he "pushed Jami [Sue] back with his elbow," causing her to land on her back on the bathroom floor, resulting in bruises.

¶ 7	Defendant also admitted hitting Jami Sue on the day she died. He stated that when he went into the children's room at 4:30 a.m., he found her tangled in her blanket again. When he pulled the blanket off of her, "she whined," which "made him so mad that he hit her." He believed he hit the back of her head. He then recalled having gone into the children's room a third time and changed the time line. Specifically, he now recalled going into the room at 1 a.m. and fixing Jami Sue's blanket. He then went into the room a second time at approximately 3:30 a.m., saw her tangled in her blanket again, yelled at her, and hit her in the head. He went into the room a third time at approximately 4:30 a.m., at which time he found her lifeless. Later, he admitted that when he went into the room at 3:30 a.m., he hit her on the head twice, not once.

¶ 8	Detective Joe Cervantez, who was also present during the interview, testified that defendant indicated that he hit the back right side of Jami Sue's head with his palm using a downward "hammering" motion. Defendant ultimately gave a videotaped statement, which was played for the jury. He did not testify at trial.

¶ 9	At the close of the evidence, the State moved to dismiss the knowing murder charge and to submit to the jury only the aggravated battery of a child and felony-murder charges. Defendant objected that proceeding in this manner removed the possibility of having the court instruct the jury on involuntary manslaughter. The court allowed the State's motion, finding it permissible for the State to proceed only on the felony-murder and aggravated battery of a child charges.

¶ 10	The jury found defendant guilty of felony murder and aggravated battery of a child. He was sentenced to mandatory natural life imprisonment.

¶ 11	On direct appeal, defendant argued that (1) the trial court erred in refusing to instruct the jury on involuntary manslaughter because the State deliberately dismissed the knowing murder charge as a strategic decision to avoid involuntary manslaughter instructions; and (2) his natural life sentence was unlawful.

¶ 12	In *People v. English*, No. 3-96-0767 (2000) (unpublished order under Supreme Court Rule 23) (*English I*), the appellate court held that "the circuit court did not abuse its discretion when it did not instruct the jury on involuntary manslaughter." *Id.* at 11. In reaching that conclusion, the *English I* court noted that the trial court instructed the jury on both recklessness and knowing conduct and stated:

> "The evidence in this case shows that [defendant] acted with intent to cause great bodily harm. The jury found [defendant] guilty of aggravated battery of a child and, therefore, that he acted intentionally or knowingly. It could not also have found that he acted recklessly. Consequently, the jury found [defendant] guilty of felony murder. Had the jury found that [defendant] merely acted recklessly, it should have acquitted him of aggravated battery of a child and could not have convicted him of felony murder." *Id.*

However, the *English I* court held that defendant's sentence was erroneous because the statute under which he was sentenced to natural life imprisonment was enacted in violation of Illinois' single-subject rule. *Id.* at 12. The court, therefore, affirmed defendant's conviction but vacated his natural life sentence and remanded for resentencing. *Id.* On remand, he was sentenced to 50 years in prison.

¶ 13	In 1999, while his direct appeal was pending, defendant filed a postconviction petition, which he voluntarily dismissed on August 6, 2003. In 2004, he filed another postconviction petition, which the circuit court treated as a successive petition and dismissed on May 24, 2004, on the State's motion. Defendant then filed a motion to reinstate his original 1999 petition. On September 26, 2005, the circuit court denied defendant's motion to reinstate his original 1999 petition. Defendant again appealed.

¶ 14	In *People v. English*, 381 Ill. App. 3d 906, 909 (2008) (*English II*), the appellate court held that it had no jurisdiction to consider the dismissal of defendant's 2004 postconviction petition because it was dismissed on May 24, 2004, and defendant failed to file a timely notice of appeal. However, the *English II* court noted that defendant did file a timely notice of appeal after the denial of his motion to reinstate his 1999 petition. In addressing that matter, the *English II* court held that the circuit court erred in denying defendant's motion to reinstate the 1999 petition. *Id.* at 910. The court noted that defendant voluntarily dismissed his 1999 petition on August 6, 2003, and moved to reinstate the petition on August 4, 2004. Because postconviction proceedings are civil in nature, the *English II* court found that, pursuant to section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 2004)), defendant had one year to refile or reinstate his voluntarily dismissed petition. *English II*, 381 Ill. App. 3d at 910. Thus, the *English II* court reversed the circuit court's denial of defendant's motion to reinstate his original petition and remanded the cause to allow the circuit court to reinstate the original postconviction petition, with amendments, and treat it as an initial petition. *Id.*

¶ 15    On remand, defendant filed the amended postconviction petition that is the subject of this appeal. Relying on *People v. Morgan*, 197 Ill. 2d 404 (2001), and *People v. Pelt*, 207 Ill. 2d 434 (2003), which were decided after his direct appeal, he argued that his felony-murder conviction based on the predicate felony of aggravated battery of a child was improper because the acts constituting the aggravated battery of a child arose from, and were inherent in, the killing. He argued that by proceeding on felony murder based on an act that was inherent in the murder, the State eliminated its burden of proving, beyond a reasonable doubt, a knowing and intentional killing, which violated his constitutional rights to due process and a fair trial.

¶ 16    The State filed an answer, arguing that the doctrine of *res judicata* barred defendant's claims and that the authorities defendant cited to support his conclusions were distinguishable from this case. After a hearing, the circuit court denied the petition, finding defendant's claim that his felony-murder conviction was improperly predicated on aggravated battery of a child barred by *res judicata* because it was related to the claim raised on direct appeal regarding the trial court's refusal to instruct the jury on involuntary manslaughter.

¶ 17    Defendant again appealed, arguing that the circuit court erred in denying his postconviction petition because the issue of whether the aggravated battery of a child could properly serve as the predicate felony for felony murder had not been addressed previously and, therefore, was not barred by *res judicata*. In its appellate brief, the State argued that the issue was procedurally barred on two alternative grounds—forfeiture and *res judicata*. In his reply brief, defendant argued that the issue was not forfeited because the analysis set out in *Morgan* and *Pelt* was not available at the time of his direct appeal. He also argued, for the first time, that if the court found that he had forfeited the issue by failing to raise it on direct appeal, then counsel was ineffective for failing to raise the issue on direct appeal.

¶ 18    In *People v. English*, 2011 IL App (3d) 100764 (*English III*), the appellate court affirmed, noting that the claim raised in defendant's postconviction petition was based entirely on matters contained within the trial record and could have been raised on direct appeal but was not. Citing *People v. Viser*, 62 Ill. 2d 568 (1975), and other cases, the *English III* court noted that the question of whether an aggravated battery that resulted in death could serve as the predicate felony for felony murder was not a new or novel concept in 1996. *English III*, 2011 IL App (3d) 100764, ¶ 18. The *English III* court then stated that the issue was barred by *res judicata*. *Id.* ¶ 20. The parties agree, and the context makes clear, that the *English III* court meant to find the issue *forfeited* because it could have been raised on direct appeal but was not. The *English III* court also found the ineffective assistance of appellate counsel issue forfeited because it was raised for the first time in defendant's reply brief. However, the court went on to find that, if it were to address the issue, it would find that counsel was not ineffective in failing to raise the issue on direct appeal because under the law at that time, aggravated battery could serve as the predicate felony for felony murder. *Id.* ¶ 24.

¶ 19    This court allowed defendant's timely petition for leave to appeal (see Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). For the reasons that follow, we affirm.

## II. ANALYSIS

The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)) provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1(a) (West 2010). A postconviction proceeding is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). To be entitled to postconviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the challenged judgment. *People v. Harris*, 206 Ill. 2d 1, 12 (2002).

The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal. *Id.* Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). However, the doctrines of *res judicata* and forfeiture are relaxed where fundamental fairness so requires, where the forfeiture stems from the ineffective assistance of appellate counsel, or where the facts relating to the issue do not appear on the face of the original appellate record. *People v. Williams*, 209 Ill. 2d 227, 233 (2004).

The Act provides a three-stage process for adjudicating postconviction petitions. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). In this case, the petition advanced to a third-stage hearing. See 725 ILCS 5/122-6 (West 2010). After an evidentiary hearing where fact-finding and credibility determinations are involved, the circuit court's decision will not be reversed unless it is manifestly erroneous. *Beaman*, 229 Ill. 2d at 72. However, if no such determinations are necessary at the third stage, *i.e.*, no new evidence is presented and the issues presented are pure questions of law, we will apply a *de novo* standard of review, unless the judge presiding over postconviction proceedings has some special expertise or familiarity with defendant's trial or sentencing and that familiarity has some bearing upon disposition of the postconviction petition. *Id.*

At the third-stage hearing in this case, the circuit court heard no new evidence; instead, the court reviewed the trial transcripts and heard arguments of counsel. In addition, the judge presiding over the hearing did not preside over defendant's trial and, thus, had no special expertise or familiarity with defendant's trial. Under these circumstances, the standard of review is *de novo*. See *id.* See also *People v. Sanders*, 238 Ill. 2d 391, 398 (2010); *People v. Caballero*, 206 Ill. 2d 65, 88 (2002).

Initially, we address the State's argument that the *English III* court's judgment should be affirmed because defendant's argument that the aggravated battery of a child could not properly serve as the predicate felony for felony murder is forfeited because it could have been raised on direct appeal but was not. Defendant responds that the argument is not forfeited because the analysis set out in *Morgan* and *Pelt* was not available to him at the time of his direct appeal. He further notes that *Viser* appeared to preclude his argument.

In 1975, this court addressed whether aggravated battery could serve as the predicate

felony for felony murder where the aggravated battery was alleged to have been committed against the person who died. *Viser*, 62 Ill. 2d at 577. The defendants in *Viser* argued that their indictments failed to properly charge murder where they alleged that the defendants had each caused the death of the victim, Hector Jordan, as they were attempting to commit or were committing a forcible felony upon him, namely, aggravated battery. *Id.* at 576-77. The defendants argued that the indictments would have been proper only if they had charged that the defendants killed Jordan while committing an aggravated battery upon the surviving victim, Harold Smith. *Id.* at 578.

¶ 27     On review, we noted that, at common law, any unlawful killing that occurred during the commission of any felony was murder. *Id.* We noted that the statute limited the offense underlying felony murder to a forcible felony other than voluntary manslaughter and that aggravated battery is a forcible felony. *Id.* at 578-79. We concluded that, in establishing the offense of felony murder, the legislature intended to deter the commission of any of the enumerated forcible felonies, including aggravated battery, by holding the perpetrator responsible for murder if death results. *Id.* at 580. Therefore, we held that the indictment charging the defendants with felony murder based on the aggravated battery of the deceased victim was proper. *Id.*

¶ 28     In *Morgan*, which was decided after defendant's direct appeal, we again discussed the circumstances in which forcible felonies may serve as predicates for felony murder. In *Morgan*, the 14-year-old defendant shot his grandmother in the back as she was fleeing her home. He tried to shoot her again as she was lying on the ground in the front yard, but the gun jammed. He was convicted of, *inter alia*, felony murder predicated on both aggravated battery and aggravated discharge of a firearm. The appellate court noted that to allow such a felony-murder conviction to stand could "effectively eliminate the second degree murder statute" and "eliminate the need for the State to prove an intentional or knowing killing in most murder cases." *People v. Morgan*, 307 Ill. App. 3d 707, 712 (1999). The appellate court held that the predicate felony underlying a felony-murder charge "must involve conduct with a felonious purpose other than the killing itself." *Id.* at 714. The appellate court therefore reversed the defendant's conviction.

¶ 29     On appeal, we agreed with the appellate court that where "the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Morgan*, 197 Ill. 2d at 447. We also agreed with the appellate court that the predicate felony underlying a felony-murder charge must have an "independent felonious purpose." *Id.* at 458. Applying these principles, we held that the forcible felonies underlying the murder charge "were acts that were inherent in, and arose out of, the fatal shootings." *Id.* at 447.

¶ 30     In *Pelt*, the defendant was convicted of aggravated battery of a child, his infant son, and first degree murder predicated on aggravated battery of a child. *Pelt*, 207 Ill. 2d at 436. The defendant's statement indicated that he was upset when the infant would not stop crying; he tried to throw the infant to the bed; and he apparently threw the infant too far because the infant hit the dresser. *Id.* at 442. The appellate court held that the defendant's felony-murder conviction was improperly predicated on aggravated battery of a child, in contravention of *Morgan*. *Id.* at 440. We agreed. *Id.* at 441. We noted that the act of throwing the infant

formed the basis of the defendant's aggravated battery conviction and was the same act underlying the killing. *Id.* Therefore, as in *Morgan*, we found that it was "difficult to conclude that the predicate felony underlying the charge of felony murder involved conduct with a felonious purpose other than the conduct which killed the infant." *Id.* at 442.

¶ 31    While defendant is correct that his argument had less support in the law at the time of his direct appeal than it has today, the argument was available to him at the time of his direct appeal. Indeed, the defendants in *Viser* made a similar argument in 1975, demonstrating that the theory on which defendant relies is not novel. See *Viser*, 62 Ill. 2d 568. Moreover, the defendant in *Morgan* faced the same legal landscape as defendant but nevertheless argued on direct appeal that aggravated battery was not a proper predicate for felony murder because it lacked an independent felonious purpose. See *Morgan*, 197 Ill. 2d 404. If the defendant in *Morgan* was able to raise the issue under such circumstances, defendant also could have done so. Accordingly, defendant's argument is forfeited. See *Harris*, 206 Ill. 2d at 13.

¶ 32    Defendant argues that, if this court concludes, as we have, that the issue was forfeited because it could have been raised on direct appeal but was not, then we must also find that his counsel was ineffective in failing to raise the issue on direct appeal. We disagree.

¶ 33    To establish that appellate counsel was ineffective, defendant must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). Under that standard, a defendant must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful. *Strickland*, 466 U.S. at 694; *Petrenko*, 237 Ill. 2d at 497. Appellate counsel is not obligated to raise "every conceivable issue on appeal," but rather is expected to "exercise professional judgment to select from the many potential claims of error that might be asserted on appeal." *Williams*, 209 Ill. 2d at 243.

¶ 34    Appellate counsel's assessment of the merits of an issue, furthermore, depends on the state of the law at the time of the direct appeal. See *People v. Weninger*, 292 Ill. App. 3d 340, 345 (1997) ("Representation based on the law prevailing at the time of trial is adequate, and counsel is not incompetent for failing to accurately predict that existing law will change. [Citation.] The same principles apply for claims of inadequate representation on direct appeal. *People v. Barnard*, 104 Ill. 2d 218 *** (1984). Appellate counsel is not required to raise issues that he reasonably determines are not meritorious. *People v. Collins*, 153 Ill. 2d 130 *** (1992)."); see also *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

¶ 35    Here, defendant concedes that the basis on which he seeks to invalidate his murder conviction, the independent felonious purpose analysis, was not supported by precedent at the time of his direct appeal. Consequently, it was reasonable for appellate counsel to conclude that the issue defendant raises here was unlikely to succeed. Counsel instead proceeded on challenges to the jury instructions and the length of defendant's sentence and ultimately was successful in having defendant's natural life sentence vacated. As a result,

defendant's sentence was reduced to 50 years in prison. Appellate counsel cannot be deemed deficient for failing to predict *Morgan* and subsequent cases. Therefore, the issue is forfeited, and the forfeiture is not excused based on ineffective assistance of appellate counsel.

¶ 36　　Finally, defendant argues that the *English III* court's decision leaves him in a procedural lurch. On the one hand, the court found that he forfeited his claim because it could have been raised on direct appeal but was not, even though the law at the time did not support such a claim. On the other hand, the court found that counsel was not ineffective in failing to raise the issue on direct appeal because the law at the time did not support such a claim. Defendant argues that, under the *English III* court's decision, he is left without any means of remedying his improper felony-murder conviction based on aggravated battery of a child, which violates the principles set forth by this court in *Morgan* and *Pelt*.

¶ 37　　The State responds that, although defendant is correct that a proper application of the forfeiture doctrine leaves him without a remedy, the limited scope of postconviction review compels this result where, as here, defendant failed to raise his claim on direct appeal when he had the chance. The State is correct in this regard.

¶ 38　　Because our resolution of the forfeiture issue is dispositive on appeal, we need not address the State's alternative arguments as to why the *English III* court's judgment should be affirmed.

¶ 39　　　　　　　　　　　　　　III. CONCLUSION

¶ 40　　For the foregoing reasons, we affirm.

¶ 41　　Affirmed.

¶ 42　　JUSTICE FREEMAN, specially concurring:

¶ 43　　Although I agree that the circuit court's judgment must be affirmed, I disagree with the court's rationale for a number of different reasons and cannot join in its opinion.

¶ 44　　This appeal from the circuit court's denial of defendant's amended postconviction petition centers on two claims upon which defendant maintains he is entitled to relief. The first is defendant's claim that his felony-murder conviction, based on the predicate felony of aggravated battery of a child, must be vacated under the independent felonious purpose rule announced in *People v. Morgan*, 197 Ill. 2d 404 (2001), and *People v. Pelt*, 207 Ill. 2d 434 (2003). This is so, defendant argues, because under the rule, the acts constituting aggravated battery of a child arose from and were inherent in the killing of the child, and thus defendant lacked the necessary independent felonious purpose. Because both *Morgan* and *Pelt* were issued after defendant's direct appeal had been decided, defendant anticipated that the State would assert a forfeiture challenge to the claim so he added a second claim in his amended petition, which alleged that his appellate counsel rendered ineffective assistance by failing to assert on direct appeal that defendant lacked an independent felonious purpose. As noted, the circuit court denied relief on both claims.

¶ 45　　The State initially argues that defendant's independent felonious purpose claim is not

cognizable on postconviction review and that the circuit court's judgment with respect to this claim can be affirmed on that basis alone. Specifically, the State maintains that the independent felonious purpose rule announced in *Morgan* was based on principles of statutory construction as opposed to constitutional mandate. Today's opinion does not address the State's argument. Instead, the court concludes that defendant forfeited the claim by not raising it on direct appeal.

¶ 46 The court's silence regarding the State's threshold argument is troubling because under the Post-Conviction Hearing Act only those claims alleging a deprivation of a constitutional right may be adjudicated. 725 ILCS 5/122-1 (West 2004). The State's cognizability argument necessarily precedes any other argument, including the forfeiture argument addressed in the opinion. A claim cannot be forfeited for purposes of postconviction review if the claim cannot be raised in a postconviction petition in the first place. This court's earliest opinions interpreting the Act make this clear. For example, in *People v. Hartman*, 408 Ill. 133, 137 (1951), we expressly held that the plain language of the Act limited review only to "constitutional questions and the denial of constitutional rights." And, in *People v. Farley*, 408 Ill. 288 (1951), the court explained why the cognizability issue was important as a threshold matter:

"The Post-Conviction Act requires the petition to state clearly a denial of a constitutional right. ***

*** [T]he intention of the legislature was not to afford a general review of every error a prisoner who is dissatisfied with his conviction may assert, but a review only of those cases in which a substantial denial of a constitutional right has been disclosed. A constitutional right must necessarily involve a constitutional question. ***

***

*** We have gone into this matter more extensively than perhaps is necessary, because we believe that under the Post-Conviction Act it is the duty of the person claiming that he has been denied substantial constitutional rights to set them forth in his petition, so that the trial court can clearly and easily determine what constitutional issue is presented, and whether defendant's claim constitutes a denial of a constitutional right." *Id.* at 294-95.

Thus, from the Act's beginnings, this court has recognized that whether a claim is cognizable under the Act is a threshold inquiry that should precede other affirmative matters that might defeat an otherwise viable claim. See also *People v. Jennings*, 411 Ill. 21, 26 (1952) (holding that the Act is limited to constitutional claims and that the trial court must determine whether the allegations, liberally construed "make a showing of imprisonment in violation of the Federal or State constitution"); *People v. Flores*, 153 Ill. 2d 264, 278 (1992) (holding that where a petition merely attaches a constitutional label to allegations that do not raise an issue of constitutional proportion, dismissal is mandatory).

¶ 47 Owing to the court's silence on the cognizability issue, there are only two possibilities that one can draw from today's opinion: Either the court (1) is unaware of the long-standing precedent regarding the need for a postconviction claim to have a constitutional basis in

-10-

order to withstand dismissal or (2) it agrees that *Morgan*'s independent felonious purpose rule is constitutional in nature. Because the State has raised the cognizability issue, the court has been made aware of the requirement that a postconviction claim have a constitutional basis to withstand dismissal. Thus, I can only conclude that the court has rejected the State's threshold argument and has determined that the independent felonious purpose rule announced in *Morgan* is constitutionally based. This means, of course, that defendant and all others like him can raise such claims on postconviction review. I disagree with this conclusion.

¶ 48    *Morgan*'s rationale for holding that a predicate felony must have an independent felonious purpose was explicit. As the court acknowledged in *Morgan*, if there were no such rule, the result would be to " 'eliminate the second degree murder statute' and also to 'eliminate the need for the State to prove an intentional or knowing killing in most murder cases.' " *Morgan*, 197 Ill. 2d at 447. In other words, the plain reading of the statute—that all forcible felonies other than second degree murder could serve as predicate felonies for felony murder—was rejected in order to avoid an absurd result and to avoid rendering part of the murder statute entirely superfluous. This was a matter of statutory interpretation, not constitutional analysis.

¶ 49    Defendant points out that one of the concerns underlying the decisions in both *Morgan* and *Pelt* was "whether the State improperly used felony-murder charges to avoid the burden of proving an intentional or knowing murder." From this, defendant contends that *Morgan* and *Pelt* ensure that the State was held to its constitutional burden of proof, and that criminal defendants would not be deprived of their rights to due process. Thus, according to defendant, *Morgan* and *Pelt* established a constitutional right that may be raised on postconviction. This is incorrect. If defendant is right, then every felony-murder conviction would be unconstitutional because in every felony-murder conviction the State does not have to prove an intentional or knowing murder.

¶ 50    The court today deprecates the statutory requirement that a postconviction claim be based on an identifiable constitutional question or violation. We have stressed in the past that merely pasting a constitutional label on an error is not enough. See *Flores*, 153 Ill. 2d at 278. At best, this is what defendant has done with respect to his independent felonious purpose claim since neither *Morgan* nor *Pelt* identify any constitutional underpinning for their *ratio decidendi*. The court is wrong in its conclusion that the independent felonious purpose rule announced in *Morgan* and followed in *Pelt* is the product of constitutional analysis as opposed to statutory interpretation. This decision has very real consequences as it will open the door for other prisoners to seek collateral relief for this same nonconstitutional error.[1]

¶ 51    Today's opinion suffers from other faults aside from its failure to address the State's threshold argument that merit comment. First, the opinion contains an internal inconsistency

---

[1]Not only does the court's opinion today conclude that the claim is constitutionally based and thus cognizable under the Act, the court also fails to explain why the rule announced in *Morgan* and *Pelt* would be retroactively applied on collateral review to a case, such as this one, that was final before the pronouncement of the rule. See *People v. Morris*, 236 Ill. 2d 345, 359 (2010).

that would prevent me from joining in it even if I were to conclude that *Morgan*'s independent felonious purpose rule was constitutionally derived and retroactive to cases on collateral review. As noted previously, the court ignores the State's threshold argument and instead begins its analysis by rejecting defendant's independent felonious purpose claim, agreeing with the State that defendant forfeited the claim when he failed to raise it in his direct appeal. The court then goes on to reject defendant's second, ineffective assistance of appellate counsel claim, holding that the forfeiture "is not excused based on ineffective assistance of appellate counsel." *Supra* ¶ 35.

¶ 52    In accepting the State's argument that defendant forfeited his independent felonious purpose claim, the court states:

> "[T]he argument was available to him at the time of his direct appeal. Indeed, the defendants in *Viser* made a similar argument in 1975, demonstrating that the theory on which defendant relies is not novel. [Citation.] Moreover, the defendant in *Morgan* faced the same legal landscape as defendant but nevertheless argued on direct appeal that aggravated battery was not a proper predicate for felony murder because it lacked an independent felonious purpose. [Citation.] If the defendant in *Morgan* was able to raise the issue under such circumstances, defendant also could have done so. Accordingly, defendant's argument is forfeited." *Supra* ¶ 31.

The upshot of this reasoning is that there was nothing new or novel about the independent felonious purpose rule at the time defendant filed his appeal. In other words, because the claim was available at that time, it is not unfair to hold the matter forfeited now on collateral review.

¶ 53    However, several paragraphs later, the court, in rejecting defendant's ineffective assistance of appellate counsel claim, states the following:

> "Here, defendant concedes that the basis on which he seeks to invalidate his murder conviction, the independent felonious purpose analysis, was not supported by precedent at the time of his direct appeal. Consequently, it was reasonable for appellate counsel to conclude that the issue defendant raises here was unlikely to succeed. *** Appellate counsel cannot be deemed deficient for failing to predict *Morgan* and subsequent cases." *Supra* ¶ 35.

The court thus states that the independent felonious purpose rule did not exist at the time defendant took his direct appeal and that *Morgan* represented a change in the law or a new development in the law that appellate counsel had to "predict" would exist in the future. In other words, appellate counsel should not be faulted for failing to foresee a rule that did not exist at the time. This, of course, is directly at odds with the court's earlier pronouncement that the theory for the independent felonious purpose rule was "not novel" at the time of defendant's direct appeal and therefore was available and could have been raised. This makes no sense. Either the rule existed and was available at the time of defendant's direct appeal or it was not. The court cannot have it both ways.

¶ 54    Defendant argues that to hold as the court does today leaves him without a remedy. To this, the court responds as follows:

> "[A]lthough defendant is correct that a proper application of the forfeiture doctrine

-12-

leaves him without a remedy, the limited scope of postconviction review compels this result where, as here, defendant failed to raise his claim on direct appeal when he had the chance." *Supra* ¶ 37.

The court's analysis essentially tells us that while defendant should have raised his argument on direct review because it was not novel and was therefore available, his counsel was not deficient for failing to predict the novel analysis that was to come in *Morgan*. This kind of logic harkens back to the days, prior to the enactment of the Post-Conviction Hearing Act, when Illinois was widely criticized for procedurally hamstringing criminal defendants who sought collateral review. See *Marino v. Ragen*, 332 U.S. 561, 569-70 (1947) (*per curiam*) (Rutledge, J., concurring, joined by Douglas and Murphy, JJ.) (noting "[e]xperience has shown beyond all doubt that, in any practical sense, the remedies available [in Illinois] are inadequate. Whether this is true because in fact no remedy exists, or because every remedy is so limited as to be inadequate, or because the procedural problem of selecting the proper one is so difficult, is beside the point.").

¶ 55      The legislature created the postconviction remedy in response to this and other criticisms regarding the available methods by which a judgment of conviction could be attacked in Illinois. See *People v. Slaughter*, 39 Ill. 2d 278 (1968); *People v. Erickson*, 161 Ill. 2d 82, 107 (1994) (McMorrow, J., dissenting, joined by Harrison, J.). The Act was designed to afford an appropriate remedy for one who asserts that a conviction was obtained in proceedings in which there was a denial of his or her rights under the federal constitution or the Illinois Constitution. *People v. Morris*, 3 Ill. 2d 437, 443-44 (1954). The court's treatment of these two claims amounts to nothing more than a "gotcha," which leaves defendant in a procedural quandary that is at odds with the legislature's intent in enacting this statutory remedy. Accordingly, I could not join in the opinion even if I were to conclude the independent felonious purpose rule claim is cognizable.

¶ 56      So far, both of the criticisms I have of today's opinion stem from the court's failure to accept the State's initial argument that the independent felonious purpose rule claim is statutory, not constitutional, and therefore may not be raised on postconviction review. These criticisms can be averted by resolving the independent felonious purpose claim on the cognizability grounds advanced by the State. In that way, the State's forfeiture argument need not be addressed and the court's problematic and inconsistent treatment of both this claim and the ineffective assistance of appellate counsel claim is avoided. I would therefore hold that defendant's claim regarding the independent felonious purpose rule is not cognizable on postconviction review. Therefore, the circuit court correctly denied relief as to that claim.

¶ 57      This leaves only defendant's ineffective assistance of appellate counsel claim, which I would reject on the basis that counsel's performance was not deficient. Claims of this nature are measured against the same standard as those dealing with ineffective assistance of trial counsel. *People v. Whitehead*, 169 Ill. 2d 355, 381 (1996); *People v. Coleman*, 168 Ill. 2d 509, 523 (1995); *People v. Foster*, 168 Ill. 2d 465, 474-75 (1995). A defendant who contends that appellate counsel rendered ineffective assistance must show that the failure to raise the issue was objectively unreasonable and that the decision prejudiced the defendant. *People v. Flores*, 153 Ill. 2d 264, 283 (1992).

¶ 58        The United States Supreme Court has noted that the *Strickland* performance standard does not require an attorney to raise every nonfrivolous issue on appeal. See *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Indeed, the process of " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail *** is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). As the Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In such cases, a defendant must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288. Here, I agree with the court that appellate counsel was not deficient in his performance for failing to predict that this court would endorse the independent felonious purpose rule. This is particularly so here where appellate counsel chose to forgo the argument in favor of a successful argument that saw defendant's sentence of natural life reduced to a 50-year term. Accordingly, the circuit court correctly denied this claim as well.

¶ 59        My final comment on today's opinion concerns a matter of procedure under the Act. The court notes that there was a "third stage hearing" in this case and that the judge presiding over the hearing "did not preside over defendant's trial and, thus, had no special expertise or familiarity with defendant's trial." *Supra* ¶ 24. The court then states that because of these facts, the standard of review is *de novo*. *Id.*

¶ 60        Unfortunately, none of these observations are accurate. While the Act does, of course, allow for evidentiary hearings to be held at the third stage of a postconviction proceeding (see 725 ILCS 5/122-6 (West 2004) (allowing circuit court to receive proof by oral testimony)), no such hearing was held in this case. Rather, after the State's motion to dismiss the petition was denied, the State filed an answer that contained purely legal arguments, and defendant filed a response to the answer, also containing pure legal arguments. At that point, the circuit court scheduled a court date at which time both attorneys argued their points of law to the judge. Thus, the case was decided by the circuit court at the second stage on the pleadings and transcripts from the original trial alone. It is for this reason that *de novo* review is appropriate—that is the correct standard a court of review will apply on appeal of a trial court's legal determination made on the pleadings. Also, the fact that the judge did not preside over the original trial has no relevance to the standard of review employed. My comments on this matter are intended only to put a more precise point on the procedural posture in which this case comes before us so as to clarify the proper procedural practice under the Act for both bench and bar.

¶ 61        JUSTICE BURKE joins in this special concurrence.