2025 IL App (1st) 231001-U

No. 1-23-1001

Order filed January 31, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 12184 |
| | ) | |
| JAVIER SOTO, | ) | Honorable |
| | ) | Charles Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1   *Held*: The dismissal of defendant's amended postconviction petition is reversed where the amended petition made a substantial showing of ineffective assistance based upon trial counsel's failure to present alibi witness Edgar Soto after promising to do so in opening statement.

¶ 2   Defendant Javier Soto appeals from the circuit court's dismissal, on the State's motion, of his amended petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* West 2022)). On appeal, he contends that the court erred because the amended

petition made a substantial showing that he was denied effective assistance by trial counsel's failure to present alibi witnesses after "promising" to present them in opening statement. We reverse and remand for further postconviction proceedings as to defendant's claim regarding alibi witness Edgar Soto.[1]

¶ 3    Following a jury trial, defendant was found guilty of attempted first degree murder and aggravated battery with a firearm, and sentenced to 34 years in prison. The victim, Jesus Salgado, was left paralyzed. We detailed the facts of this case in our order on direct appeal affirming defendant's conviction. See *People v. Soto*, 2015 IL App (1st) 132367-U. We relate only those facts relevant to the issue under the Act presently on appeal.

¶ 4    During opening statements, trial counsel stated that defendant was not present at the shooting; rather, he was with Julian Martinez and Edgar. Specifically, counsel told the jury:

> "On June 21 Mr. Soto is with his friend[s], Julian Martinez and Edgar Soto. You're going to hear from both of them. You're going [to] hear that throughout the day they went to summer school to pick a friend, they went to some of their friend's house, opened up a fire hydrant on this hot day, played in the fire hydrant. The whole day is taken up by hanging out with friends and doing what people do on a summer day. And at no point, at no point would Mr. Soto have had the time or the ability to do this act."

¶ 5    Salgado testified that around 10 p.m. on June 21, 2011, he was on the 6000 block of South Washtenaw Avenue in Chicago outside the home of Miguel Islas. Salgado saw defendant, whom he also knew as "Little Joker," pass by in a blue vehicle. Defendant wore a black t-shirt. Salgado then went to Islas' porch. Three or four minutes later, a person exited a gangway and shot Salgado,

---

[1] For clarity, we refer to Edgar Soto, who is not related to defendant, by his first name.

who fell to the ground. At trial, Salgado said the shooter was wearing blue jeans. He said he was not "a hundred percent sure" that defendant was the shooter. He acknowledged telling the police that Little Joker was the shooter, but asserted that the police asked whether the shooter resembled defendant and that he answered affirmatively.

¶ 6 On June 21, 2011, while in the hospital, Salgado spoke to detectives, stated that Little Joker was the shooter, and identified defendant in a photographic array. On July 7, 2011, when Salgado was still hospitalized, had a breathing tube, and could not speak, he met with an assistant State's attorney (ASA) and made a written statement in which he said that he saw defendant in the vehicle and also saw "him" after being shot. Salgado agreed that some things in his written statement were inaccurate because he was unsure who shot him and it was "fair to say" that he did not see the shooter. He testified that he picked out defendant's photograph not because he had seen him do the shooting but because he had seen him in the blue vehicle that passed by several minutes beforehand.

¶ 7 Islas testified that Salgado stated that Little Joker was the shooter. Islas knew Little Joker from his neighborhood. However, he did not identify anyone in the courtroom as Little Joker or as the shooter. On July 7, 2011, Islas spoke to detectives and an ASA at a police station and identified a photograph of Little Joker, but did not remember stating that Little Joker was a passenger in the blue vehicle or that he saw Little Joker shooting a firearm. At trial, he asserted that he did not see the shooter and did not know who shot Salgado.

¶ 8 A Chicago police detective testified that on June 21, 2011, Salgado identified the shooter as Little Joker and later identified defendant in a photographic array. On July 6, 2011, Islas identified defendant in a line-up.

¶ 9    An ASA testified that on July 7, 2011, Islas made a written statement and that a photograph of defendant, who Islas identified as the shooter, was attached to the statement. The ASA then met with Salgado to take his statement. Salgado could not speak at that time because there was a tube in his throat, so he and the ASA each wrote portions of the statement. Attached to the statement was a photograph of defendant, whom Salgado identified as the shooter.

¶ 10    The State rested and then the defense rested without introducing any evidence. The defense then moved for a judgment of acquittal asserting that defendant was not identified in court as the shooter. The court denied the motion, as the witnesses' prior statements were admitted as substantive evidence of their previous identifications. The defense reiterated that it rested. The trial court then questioned defendant about the decision to rest without presenting any evidence. Specifically, the trial court told defendant that the decision not to call witnesses is made by the attorney, and then asked defendant whether he talked to his attorney about that decision and whether he agreed with the decision. Defendant responded in the affirmative to both questions.

¶ 11    During closing arguments, the defense addressed, relevant here, the lack of physical evidence and the witnesses' prior identifications as compared to their trial testimony. Counsel also stated that defendant and his witnesses were prepared to testify about where defendant was at the time of the incident. The State objected, and the trial court sustained the objection. Counsel then stated that defendant did not have "to say a word" and was presumed innocent. The jury found defendant guilty of attempted first degree murder and aggravated battery with a firearm.

¶ 12    At sentencing, defendant addressed the court and asserted that he had "many" disagreements with counsel including, relevant here, whether he and his witnesses would testify, which was "changed at the last minute." He said he believed that "if certain issues and evidence

were brought to the Court's attention, the outcome of the verdict would have been different." The court then asked if it questioned defendant at trial whether he wished to present witnesses, spoke to counsel about witnesses, and agreed with the decision not to present witnesses. Defendant acknowledged that he had agreed with trial counsel's decision not to call witnesses, but asserted that because it was his "first time ever being in a trial," he did not understand "much of it" and just figured that his trial counsel knew what she was doing and that "the best way to go [was] the way she wanted me to go."

¶ 13　The court then conducted a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The court asked trial counsel whether she discussed presenting witnesses with defendant. Counsel acknowledged that witnesses were prepared to testify as to defendant's alibi defense. However, she stated that she, co-counsel, and defendant made a "strategic decision" not to present an alibi defense following "extensive conversations." Counsel asserted that defendant agreed with the decision "at the time." The court stated that defendant was represented by "very able" attorneys who "brought out the fact" that the State's witnesses recanted their earlier identifications of defendant. Additionally, the court noted that it had asked defendant whether he agreed with the defense's decision to rest at the conclusion of the State's case without presenting any evidence and that defendant agreed with that decision. The court concluded that defendant's constitutional rights were not violated and he received a fair trial.

¶ 14　The court then merged the aggravated battery count into the attempted first-degree murder count and imposed a 34-year sentence.

¶ 15　On direct appeal, defendant contended, relevant here, that he was denied effective assistance based on trial counsel's failure to present alibi testimony from defendant's two friends

after she had promised to do so in her opening statement. See *Soto*, 2015 IL App (1st) 132367-U, ¶¶ 2, 67, 71.

¶ 16     In rejecting defendant's contention, we noted that when trial counsel informed the court that the defense rested without presenting any evidence, the court questioned defendant whether he understood and agreed with this decision, and whether defendant discussed it with counsel. *Id.* ¶ 73. We found that defendant answered all of the trial court's questions affirmatively, "demonstrating that he knew of and concurred with his counsel's strategy at trial." *Id.* Thereafter, at the preliminary *Krankel* inquiry into defendant's oral posttrial claim that he was denied effective assistance, defendant conceded that the trial court inquired during trial whether he agreed with counsel's decision not to present alibi witnesses and that he answered affirmatively. *Id.* ¶ 74. Trial counsel also related to the court that whether to present alibi witnesses was extensively discussed with defendant, who participated in the decision not to present alibi witnesses. *Id.* We therefore concluded that defendant's claim was forfeited pursuant to the doctrine of invited error. *Id.* ¶¶ 72, 74. We noted, however, that we were unable to determine the content of the proposed alibi testimony as it was not contained in the record. *Id.* ¶ 75.

¶ 17     On November 16, 2016, defendant filed a *pro se* postconviction petition alleging that he was denied effective assistance when trial counsel "promised" the jury an alibi defense but then failed to present available alibi witnesses, Martinez and Edgar. Affidavits from defendant and Edgar were attached to the petition.

¶ 18     In his affidavit, defendant averred that he had not been in contact with Martinez for two years, did not have a phone number for Martinez, and was unable to "reach" Martinez at a physical address.

¶ 19     In his affidavit, Edgar averred that he was with defendant starting around 11 a.m. on July 21, 2011, and ending around midnight that day. During that time, they opened a fire hydrant, had a meal, drove friends home, returned to the fire hydrant, and then went to defendant's home. Relevant here, Edgar averred that around 10:05 p.m. (the time of the shooting), he and defendant were at a Marathon gas station at 63rd Street and Sacramento Avenue, that defendant was wearing a white tank top and black shorts the entire time they were together, and that they were together until after midnight. Edgar averred that he was present in court and ready to testify at trial but that defendant's attorney informed him, Martinez, and "Thaer" that they would not be testifying.

¶ 20     The circuit court docketed the petition, appointed postconviction counsel, and the case proceeded to the second stage under the Act.

¶ 21     In January 2023, postconviction counsel filed an amended petition alleging, relevant here, that defendant was denied effective assistance by counsel's failure to present alibi witnesses. The amended petition asserted that because two State eyewitnesses equivocated or recanted their identifications of defendant at trial, there was no strategic reason not to present alibi witnesses to counter the State's witnesses' prior identifications. The amended petition alleged that the failure to present these alibi witnesses prejudiced defendant when no physical evidence, footage, or inculpatory statement connected him to the offense. The amended petition asserted that this claim was not barred by *res judicata*, as the substance of the alibi witnesses' proposed testimony was not included in the record on direct appeal, and that the doctrine of invited error was inapplicable because the decision whether to present witnesses ultimately rested with counsel. The State filed a motion to dismiss, which the court granted on May 23, 2023. The court stated that "even if it were objectively unreasonable for counsel not to call the above witnesses, it cannot be said

[defendant] suffered any prejudice as a result of his counsel's actions" because defendant "concurred with counsel's trial strategy" and "agreed with counsel's decision not to call alibi witnesses despite what was stated in openings."

¶ 22    On appeal, defendant contends that the circuit court erred in granting the State's motion to dismiss when the amended petition made a substantial showing that he was denied effective assistance by trial counsel's failure to present alibi witnesses after promising the jury that it would hear from two of defendant's friends. Defendant asserts that he was prejudiced by this failure because the witnesses would have corroborated his alibi defense and contradicted the State's witnesses' prior identifications.

¶ 23    The Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the circuit court does not dismiss a petition as frivolous or patently without merit, then it advances to the second stage of proceedings under the Act. *People v. Domagala*, 2013 IL 113688, ¶¶ 32-33. At the second stage, the circuit court examines a postconviction petition to determine whether the petition and any accompanying documentation make a substantial showing of a violation of constitutional rights. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). A substantial showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Domagala*, 2013 IL 113688, ¶ 35. At this stage, the circuit court does not engage in fact-finding or credibility determinations; rather, all well-pleaded facts not positively rebutted by the record are taken as true. *Id*. We review *de novo* the dismissal of a postconviction petition at the second stage. *People v. Huff*, 2024 IL 128492, ¶ 13.

¶ 24    Initially, we must address the State's assertion that defendant's claim that he was denied effective assistance by trial counsel's failure to present alibi witnesses is barred by the doctrine of *res judicata* because he raised it before the trial court and on direct appeal.

¶ 25    The purpose of a postconviction proceeding is to permit inquiry into constitutional issues that were not, and could not have been, raised on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues that were decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* However, *res judicata* and forfeiture are relaxed where fundamental fairness so requires, the forfeiture stems from the ineffective assistance of appellate counsel, or when "the facts relating to the issue do not appear on the face of the original appellate record." *Id.*

¶ 26    Here, defendant argues that his claim is not barred by *res judicata* because the facts contained in Edgar's affidavit were not contained in the record on direct appeal. Defendant relies on *People v. Wilson*, 2013 IL App (1st) 112303, for support, where the court rejected the defendant's claim on direct appeal that he was denied effective assistance by trial counsel's failure to call the defendant's girlfriend as a witness. *Id.* ¶ 8. The court found that counsel " 'made a conscious decision' " to not call the witness which, as a matter of trial strategy, was generally immune from ineffective assistance claims. *Id.* The defendant subsequently filed a postconviction petition alleging in part that he was denied effective assistance when trial counsel failed to interview or present the defendant's girlfriend as an alibi witness. *Id.* ¶ 9. The defendant attached the girlfriend's affidavit to the petition. *Id.* ¶ 10. The circuit court dismissed the petition based on, *inter alia*, *res judicata*. *Id.* ¶ 11. On appeal, the court first addressed the State's argument that the defendant's claim was barred by *res judicata* because it was addressed and rejected on direct

appeal. *Id*. ¶ 13. The court found that the details of the girlfriend's "testimony as set out in the affidavit are not part of [the direct appeal] record, and it also is not clear from the record that counsel knew the substance of [her] account." *Id*. ¶ 17. Consequently, because the facts relating to the defendant's ineffective assistance claim were outside the record on direct appeal, *res judicata* did not bar the court from addressing the claim in a postconviction proceeding. *Id*.

¶ 27 Pursuant to *Wilson*, we must determine whether defendant has provided new facts here that were not part of the record on direct appeal. Defendant contends that he was denied effective assistance by counsel's failure to call Edgar, Martinez, and Thaer Banibaker as witnesses, who were named in the supplemental answer to discovery as witnesses and were present at trial and willing to testify. Defendant has not provided affidavits from Martinez and Banibaker and has therefore presented no facts relating to their proposed alibi testimony. Therefore, *Wilson* is inapplicable as to Martinez and Banibaker, and *res judicata* bars our consideration of defendant's ineffective assistance claim concerning those witnesses.

¶ 28 However, defendant has provided an affidavit from Edgar which details Edgar's and defendant's movements on the day of the shooting. There are at least two salient facts in Edgar's affidavit that are not included in the record on direct appeal. First, Edgar avers that defendant was with him at a Marathon gas station at 63rd Street and Sacramento Avenue at the time of the shooting. Second, Edgar avers that defendant was wearing a white tank top and black shorts the entire time they were together, which conflicts with Salgado's testimony that defendant was wearing a black t-shirt and blue jeans. Although counsel told the jury that she was prepared to present alibi witnesses to account for defendant's whereabouts on the day of the shooting, her statement was general in nature and did not include the specific facts in Edgar's affidavit. Indeed,

we noted on defendant's direct appeal that we were unable to determine the content of the proposed alibi testimony as it was not contained in the record. Moreover, nothing in the record indicates what inquiries counsel made of Edgar regarding these specific facts prior to or at the time of trial. See *Wilson*, 2013 IL App (1st) 112303, ¶ 17 (ineffective assistance claim not barred by *res judicata* because the details of the girlfriend's "testimony as set out in the affidavit are not part of [the direct appeal] record, and it also is not clear from the record that counsel knew the substance of [her] account"). If the specific details contained in Edgar's affidavit were in fact known to counsel but there were other strategic reasons why counsel elected not to call Edgar, then those considerations are not included on the record on direct appeal either. Because the specific facts contained in Edgar's affidavit, including defendant's location at the time of the shooting and the color and type of clothing he was wearing, were not contained in the record on direct appeal, our consideration of defendant's ineffective assistance claim is not barred by *res judicata*.

¶ 29    Turning to the merits, to succeed on a claim of ineffective assistance, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id*. at 694. A defendant's failure to establish either prong is fatal to his claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 30    At second stage proceedings under the Act, the "question is whether the allegations of the petition, supported by the trial record and the accompanying affidavits, demonstrate a substantial

constitutional deprivation which requires an evidentiary hearing." See *People v. Makiel*, 358 Ill. App. 3d 102, 106 (2005).

¶ 31 "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶ 79. "[T]hese types of decisions are considered matters of trial strategy and are generally immune from claims of ineffective assistance of counsel." *Id*. Notwithstanding, "[a]ttorneys have an obligation to explore all readily available sources of evidence that might benefit their clients." *People v. Morris*, 335 Ill. App. 3d 70, 79 (2002). The failure to present available witnesses to corroborate a defense can result in ineffective assistance. *Id*.

¶ 32 Counsel's strategic decisions may be deemed ineffective when they result in the failure to present exculpatory evidence of which counsel was aware, including the failure to call witnesses whose testimony would support an otherwise uncorroborated defense. See *People v. Willingham*, 2020 IL App (1st) 162250, ¶¶ 48, 50; see also *People v. Butcher*, 240 Ill. App. 3d 507, 510 (1992) (trial counsel's failure to call two witnesses who would "corroborate and buttress" testimony that the defendant was not one of the offenders was not a reasonable trial strategy); *People v. King*, 316 Ill. App. 3d 901, 919 (2000) (finding that trial counsel was ineffective when he failed to call an alibi witness for the defense and presented no evidence to counter the State's witnesses when no physical evidence connected defendant to the rape and his conviction was based primarily on the testimony of the victim, who gave conflicting accounts).

¶ 33 Initially, the State argues that defendant cannot now complain about trial counsel's decision not to present alibi witnesses because the defendant told the trial court that he agreed with that decision. However, "waiver is a limitation on the parties and not the court," so we may consider

the merits of defendant's claim. *People v. Velez*, 388 Ill. App. 3d 493, 503-04 (2009) (deciding to reach the merits of defendant's ineffective assistance of counsel claim based on defense counsel's decision to abandon a motion to suppress defendant's statements even though the court admonished him that withdrawing the motion would bar it from ever being litigated and defendant "assured the court that he wished to withdraw the motion based on his own free will").

¶ 34   We find that the allegations in defendant's petition, as supported by defendant's and Edgar's affidavits, made a substantial showing that defendant was denied effective assistance based on trial counsel's failure to present Edgar's testimony in support of defendant's alibi defense. Edgar was named as a potential witness prior to trial, and counsel stated in opening statement that the jury would hear from several witnesses, including Edgar, regarding defendant's movements on the day of the shooting, which supported an alibi defense for defendant. During the State's case-in-chief, Salgado and Islas acknowledged their prior identifications of defendant, but neither man identified defendant in court as the shooter.

¶ 35   The record before us does not reflect any strategic reason for counsel's failure to present Edgar as a witness in support of defendant's otherwise uncorroborated alibi defense. See *People v. Brown*, 2017 IL App (3d) 140921, ¶ 32 (counsel's performance may be deficient when counsel fails to call a known witness whose testimony may exonerate a defendant); *People v. Winkfield*, 2015 IL App (1st) 130205, ¶ 21 ("once defense counsel has made a definite promise to present evidence, especially a promise of exculpatory evidence, absent extenuating circumstances, defense counsel must diligently attempt to fulfill the promise due to the gravity of such a pledge"); *People v. Briones,* 352 Ill. App. 3d 913, 918 (2004) (quoting *U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 259 (7th Cir. 2003)) ("Promising a particular type of testimony creates an expectation in the

minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the testimony would have been adverse to his client and may also question the attorney's credibility. In no sense does it serve the defendant's interests.")

¶ 36    Accepting the contents of Edgar's affidavit as true, as we must at this stage of the proceedings, we know that Edgar was present at trial and presumably would have testified as to his and defendant's activities on the day of the shooting. Specifically, Edgar's proposed testimony would have placed defendant at a Marathon gas station at the approximate time of the shooting, contradicted the eyewitnesses' prior statements that they saw defendant drive by Islas' house minutes before the shooting, and established that the clothing that defendant was wearing on the day of the incident was different from the clothing described by the State's witness. Edgar's alibi testimony could only have aided defendant's case, especially as Salgado and Islas did not identify defendant as the shooter at trial. See *Willingham*, 2020 IL App (1st) 162250, ¶ 48 ("the failure of trial counsel to call a witness who would contradict the State's evidence and support the defense reflects deficient performance").

¶ 37    The State responds that trial counsel's decision not to present Edgar as an alibi witness was "sound" trial strategy considering the "change in circumstances" when Salgado and Islas did not identify defendant at trial. The State further argues that it can be "inferred" that trial counsel decided to forgo an alibi defense and "risk" presenting a witness who could be cross-examined in favor of resting on the inconsistent testimony of the State's witnesses. The State finally notes that trial counsel addressed the change in strategy in closing arguments.

¶ 38    However, the record reflects that when trial counsel stated, during closing argument, that defendant and his witnesses were prepared to testify, the State objected and the trial court sustained

the objection. At that point, counsel ended that portion of the argument, provided no additional details as to the proposed testimony, did not explain why the witnesses did not testify, and instead stated that defendant was not required "to say a word" because he was cloaked in the "presumption of innocence." On this record, we do not see how defense counsel's actions can be viewed as strategic. See *People v. King*, 316 Ill. App. 3d 901, 919 (2000) (finding that trial counsel was ineffective when he failed to call an alibi witness for the defense and presented no evidence to counter the State's witnesses when no physical evidence connected defendant to the rape and his conviction was based primarily on the testimony of the victim, who gave conflicting accounts). *Cf. People v. Winkfield*, 2015 IL App (1st) 130205, ¶ 26 (finding no ineffective assistance of counsel even though defense counsel failed to present several alibi witnesses it had promised to present in opening arguments in part because defense counsel presented a witness whose testimony "supported defense's theory" and "undermin[ed] the credibility" of the State's key witness).

¶ 39    Because the record is unclear as to whether trial counsel's decision not to call Edgar "was a matter of counsel's trial strategy or counsel's incompetence, [defendant] is entitled to a postconviction evidentiary hearing on that issue." *People v. Cabrera*, 326 Ill. App. 3d 555, 564-65 (2001); see also *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 46 (when the record reveals no strategic reason for counsel's decision, the petition must advance to an evidentiary hearing and once "the trial court hears evidence on this issue, it will be in a better position to review whether counsel provided effective assistance of counsel") (internal quotation marks omitted).

¶ 40    We note that no physical evidence connected defendant to the offense and the State's witnesses did not identify defendant as the shooter at trial. Under these circumstances, if the jury had been presented with any evidence of defendant's alibi, it would have had a basis upon which

to acquit him. See *Makiel*, 358 Ill. App. 3d at 108-09 (defendant was entitled to an evidentiary hearing on his claim that counsel was ineffective for failing to subpoena a separately tried co-offender where questions of fact existed as to whether counsel's failure to interview and subpoena this person rendered defendant's trial fundamentally unfair and the record reflected no strategic reason for counsel's failure to call the witness); see also *People v. Coleman*, 267 Ill. App. 3d 895, 898-99 (1994) (counsel's failure to interview, subpoena, and present witnesses who would have testified as to defendant's whereabouts at the time of the offense, including one who would have provided an "alibi at the exact time of the occurrence," supported defendant's successful ineffective assistance claim).

¶ 41　Here, taking defendant's well-pleaded allegations as true, as we are required to do at this stage, on this record we find that no reasonable trial strategy supported trial counsel's decision not to call Edgar, who would have testified in support of defendant's alibi by placing defendant at a Marathon gas station at the approximate time of the shooting in clothes different from those described by Salgado. Contrary to the State's position, the record does not reflect any rationale for counsel's failure to present Edgar. While there may be a strategic explanation for this decision, this question is necessarily best resolved at a third-stage evidentiary hearing. Accordingly, on this record, defendant has made a substantial showing that he was denied effective assistance by trial counsel's failure to present Edgar's testimony in support of defendant's alibi defense at trial.

¶ 42　For the foregoing reasons, we reverse the dismissal of the amended postconviction petition, and remand for further proceedings under the Act.

¶ 43　Reversed and remanded.