NOTICE

Decision filed 03/15/21 The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2021 IL App (5th) 180216-U

NO. 5-18-0216

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-927 |
| | ) | |
| RICHARD BROWN, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the defendant's *pro se* postconviction petition failed to meet the applicable pleading requirements, and the circuit court followed proper procedures in summarily dismissing the petition, and any argument to the contrary would be without merit, appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court, summarily dismissing the postconviction petition, is affirmed.

¶ 2    The defendant, Richard Brown, appeals from the circuit court's order summarily dismissing his *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)).   In 2016, the defendant pleaded guilty to unlawful participation in methamphetamine manufacturing, and the circuit court sentenced him to imprisonment for a 12-year term, all in accord with a fully negotiated plea agreement between the defendant and the State.  The defendant did not appeal from the judgment of conviction.  In 2018, the defendant filed

1

his postconviction petition, and the circuit court entered the summary dismissal order that is the subject of this appeal. The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support of the motion. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD served the defendant with a copy of its motion and memorandum. This court provided the defendant with ample opportunity to file a *pro se* response, brief, memorandum, etc., objecting to OSAD's motion or explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and supporting memorandum, as well as the entire record on appeal. For the reasons that follow, this court has determined that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion must be granted, and the judgment of the circuit court must be affirmed.

¶ 3                                BACKGROUND

¶ 4      In April 2014, the State filed a two-count information against the defendant. Count I charged the defendant with aggravated unlawful participation in methamphetamine manufacturing, in violation of section 15(b)(1)(B) of the Methamphetamine Control and Community Protection Act (720 ILCS 646/15(b)(1)(B) (West 2014)). The count alleged, *inter alia*, that he had participated in the manufacture of 400 grams or more but less than 900 grams of methamphetamine, and that he knowingly did so in a structure where a child under the age of 18 was present. The information noted that the offense charged in count I was a Class X felony punishable by imprisonment for a term of 15 to 60 years. See *id.* § 15(b)(2)(D). Count II of the information charged the defendant with unlawful possession of methamphetamine manufacturing materials, in violation of section 30(a) of the Methamphetamine Control and Community

Protection Act (*id.* § 30(a)), a Class 2 felony (*id.* § 30(b)). The defendant hired counsel to represent him. In March 2016, the defendant appeared before the circuit court and, after hearing appropriate admonishments from the court, waived his right to a trial by jury.

¶ 5 At some point, the State amended by interlineation count I of the information. The amended count I charged the defendant with (nonaggravated) unlawful participation in methamphetamine manufacturing, a Class X felony punishable by imprisonment for a term of 6 to 30 years, under section 15(a)(2)(B) of the Methamphetamine Control and Community Protection Act (*id.* § 15(a)(2)(B)). It alleged that the defendant had participated in the manufacture of 15 grams or more but less than 100 grams of methamphetamine. There was no mention of a child's being present at the time of the methamphetamine manufacturing, which had been the aggravating factor in the original count I.

¶ 6 On May 18, 2016, the defendant, his defense counsel, and a prosecutor appeared before the court. The attorneys informed the court that the defendant would plead guilty to the amended count I of the information in exchange for a sentence of imprisonment for a term of 12 years, with day-for-day credit and credit for time spent in custody, and the dismissal of count II. The prosecutor provided a factual basis for a guilty plea, stating that if a trial were held, the State's evidence would show that on April 24, 2014, Edwardsville police received word that methamphetamine was being manufactured in a house in which the defendant resided, and during a subsequent search of the house, police officers found more than 15 grams of a substance containing methamphetamine, in the midst of the manufacturing process, and the defendant "was a resident of the household and responsible for the manufacture of that substance." Defense counsel agreed that the recited evidence would be the State's evidence at a trial.

¶ 7     Addressing the defendant personally, the court described the allegations contained in the original count I, in the amended count I, and in count II, and the court noted the differences between the original count I and the amended count I.  The court continued as follows:

> "So your attorney tells me that you are pleading guilty to that Amended Count I, and in exchange for your plea of guilty to that Amended Count I you would be sentenced to 12 years in the Illinois Department of Corrections, that is a day-for-day or a 50 percent sentence.  Of course you can lose good[-]time credit in prison by misconduct.  Upon your release from the Department of Corrections you would be subject to a three-year mandatory supervised release period.   Count II, Unlawful Possession of Methamphetamine Manufacturing Materials, would be dismissed.  Is that your understanding of your negotiations, Mr. Brown?"

The defendant answered, "Yes, sir, it is."  In response to further queries from the court, the defendant indicated that he was 64 years old, had earned a GED, was not under the influence of alcohol or drugs, and understood the day's proceedings.  The court reviewed the allegations in the amended count I and asked the defendant whether he pleaded guilty or not guilty to that count, and the defendant indicated that he understood the allegations and pleaded guilty.

¶ 8     The court admonished the defendant on the presumption of innocence, the burden of proof, his right to counsel, his right to plead not guilty, his right to a trial, whether by a jury or by the court alone, his rights at trial, including the right to remain silent, and that he would waive his right to a trial by pleading guilty, and the defendant indicated his understanding of all those matters. The court informed the defendant that unlawful participation in methamphetamine manufacturing was a Class X felony punishable by imprisonment for 6 to 30 years.  "Upon your release from [prison]," the court added, "you would be subject to a three-year mandatory supervised release

4

period." The defendant indicated his understanding of the possible penalties. He also indicated that nobody had forced or threatened him into pleading guilty, nobody had promised him anything beyond the stated terms of the plea agreement, and that he was pleading freely and voluntarily, after discussing the plea with his attorney.

¶ 9 The court found that the defendant understood the nature of the charge and the possible penalties, and that he was pleading freely, voluntarily, and knowingly, and the court accepted his guilty plea. The State and the defendant waived the preparation of a presentence investigation report and stipulated to the criminal history contained in the court file. On the amended count I, charging the defendant with unlawful participation in methamphetamine manufacturing, the court sentenced the defendant to imprisonment for a 12-year term. "Upon your release from [prison]," the court added, "you will be required to serve a three-year mandatory supervised release." The court dismissed count II. The court asked the defendant whether the sentence was what he expected, and the defendant answered, "Yes, sir, it is." The court asked the defendant whether he understood the sentence, and the defendant answered, "Yes, I do." Then, the court admonished the defendant, at some length, as to appeal rights and procedures, and the defendant indicated his understanding. Finally, the court asked the defendant whether he had any question about anything that had transpired at the hearing, and the defendant answered, "No, sir."

¶ 10 On August 21, 2017, the defendant filed a *pro se* petition for postjudgment relief pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)) and Illinois Supreme Court Rule 105 (eff. Jan. 1, 1989) (where new or additional relief is sought against a party not entitled to notice under Rule 104, the party must be given notice as provided in Rule 105). The defendant alleged that the circuit court ran afoul of the constitutional prohibition against double jeopardy when it sentenced him to both imprisonment and mandatory supervised release

(MSR) for a single criminal offense. According to the defendant, (1) imprisonment and MSR are two separate sentences for a single crime, and (2) his violation of any of the numerous rules associated with MSR could result in his being sent back to prison. The section 2-1401 petition also included a paragraph stating that a defendant's mere presence at a crime scene is insufficient to establish accountability. Accompanying the section 2-1401 petition was a motion for the appointment of counsel.

¶ 11 In a written order, the circuit court denied the defendant's motion for appointment of counsel, but it granted the State an opportunity to file a responsive pleading and granted the defendant an opportunity to file a response to any pleading from the State.

¶ 12 Apparently, the State did not file a responsive pleading. On December 26, 2017, the circuit court entered a written order denying the section 2-1401 petition. The court found that the statutory MSR scheme was constitutional as applied to the defendant.

¶ 13 On January 23, 2018, the defendant filed a *pro se* "answer and ammended [*sic*] petition for post-judgement [*sic*] relief" and a *pro se* "second amended petition." In the first of these two *pro se* pleadings, the defendant stated that his amended petition was brought pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). Both *pro se* pleadings presented essentially the same claims. The defendant claimed that "a misrepresentation of the Illinois criminal statutes resulted in a term of mandatory supervised release being in violation of the 4th, 5th, 6th, 8th, and 14th amendments of the U.S. Constitution and Article I sections 2, 8, 10, 12, and 24 of the Illinois Constitution." The defendant alleged that he had not been informed, prior to pleading guilty, that he would be required to serve a three-year MSR term, and he further alleged that even if he was informed of the MSR term at the guilty-plea hearing, he had not been informed of it prior to the hearing, rendering his guilty plea unintelligent and involuntary. Also, the

6

defendant alleged that the statutory MSR scheme ran afoul of due process because it allowed for the reimprisonment of a criminal defendant who violated an MSR rule, without benefit of a trial by judge or jury; that the MSR term had deprived him of the benefit of his plea bargain; and that his two sentences, *i.e.*, a prison sentence imposed by the circuit court and an MSR term imposed by the Prisoner Review Board, ran afoul of the constitutional prohibition against double jeopardy. (Other than the above-described references to due process and double jeopardy, the defendant did not explain how his case implicated the various and sundry constitutional provisions that he had listed.) For relief, the defendant asked the court either to reduce his prison sentence by three years or to vacate the sentence of MSR.

¶ 14 On March 7, 2018, the circuit court entered a written order summarily dismissing the defendant's postconviction petition. The court found that the petition lacked any arguable basis in law or in fact and was therefore frivolous or patently without merit. The court also found that the record flatly contradicted the defendant's claim that he had not been admonished about the MSR requirement.

¶ 15 On April 2, 2018, the defendant filed a notice of appeal from the circuit court's order dated December 26, 2017, wherein the court denied the defendant's section 2-1401 petition. The next day, the circuit court appointed OSAD to represent the defendant on appeal. With leave of this court, OSAD filed, on behalf of the defendant, an amended notice of appeal, which made clear that this appeal is actually from the circuit court's March 7, 2018, order summarily dismissing the defendant's postconviction petition.

¶ 16                                    ANALYSIS

¶ 17 This appeal is from the summary dismissal of a petition for postconviction relief. Appellate review is *de novo*. *People v. Allen*, 2015 IL 113135, ¶ 19.

7

¶ 18    As previously mentioned, OSAD has filed with this court a *Finley* motion to withdraw as the defendant's attorney in this appeal, along with a memorandum of law in support of the motion. In its memorandum, OSAD discusses two potential issues in this appeal, *viz.*: (1) whether the defendant's postconviction petition, with its allegations about MSR sentences in general and his MSR sentence in particular, presented the gist of a constitutional claim, and (2) whether the circuit court committed any procedural error in summarily dismissing the postconviction petition. This court examines each of these two potential issues.

¶ 19    The Post-Conviction Hearing Act (Act) provides a method by which any person imprisoned in the penitentiary may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a postconviction proceeding by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2014). The circuit court is required to examine a defendant's postconviction petition, and enter an order thereon, within 90 days after the petition is filed and docketed. *Id.* § 122-2.1(a). A circuit court needs to determine within the 90-day timeframe whether it should summarily dismiss the defendant's petition as frivolous or patently without merit (*id.* § 122-2.1(a)(2)) or order the petition to be docketed for further consideration (see *id.* § 122-2.1(b)). The court must make that determination independently, without any additional input from the defendant, and without any input from the State. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). A *pro se* postconviction petition may be dismissed as frivolous or patently without merit

> "only if the petition has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless

8

legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). The pleading requirements for a *pro se* petition certainly are low, but they must be met if the petition is to avoid summary dismissal. See *id.* at 9.

¶ 20 The first of OSAD's two potential issues in this appeal is whether the defendant's postconviction petition, with its allegations that MSR sentences are unconstitutional, presented the gist of a constitutional claim. To say that a *pro se* postconviction petition presents "the gist of a constitutional claim" is merely to say that the petition meets the pleading requirements described in *Hodges*, even if the petition may lack formal legal arguments or citations to legal authority. See *id.*

¶ 21 In his postconviction petition, the defendant made a few allegations about MSR sentences in general and his MSR sentence in particular. First, he alleged that he had not been informed, prior to his pleading guilty, that he would be required to serve a three-year MSR term, and that even if he was informed of the MSR term during the guilty-plea hearing, he had not been informed of it prior to the guilty-plea hearing, thus rendering his guilty plea unintelligent and involuntary. For a guilty plea to be intelligently made, and valid under the due process clause, the record must affirmatively show that the plea was entered with full knowledge of the plea's consequences. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969).

¶ 22 The transcript of the May 18, 2016, guilty-plea hearing contradicts the allegation that the defendant was not informed of the MSR term prior to pleading guilty. The transcript plainly shows that the circuit court, immediately prior to the defendant's plea of guilty to the amended count I, summarized the previously-stated terms of the plea negotiations and informed the defendant that

9

he would be "subject to" a three-year MSR term upon his release from prison, and the defendant indicated that the court's description of the terms of the plea negotiations matched his own understanding of those negotiations. After the defendant pleaded guilty, the court admonished him as to his right to trial, his rights at trial, and the possible sentences for the offense charged in the amended count I, and in this regard the court stated that upon the defendant's release from prison, he would serve a three-year MSR term, and the defendant indicated his understanding of all those matters. Finally, after accepting the defendant's guilty plea as knowing and voluntary, the court imposed the agreed-upon 12-year prison sentence and told the defendant that upon his release, he would be "required to serve" a 3-year MSR term. The court asked the defendant whether the sentence was what he expected and whether he understood the sentence, and the defendant answered each question in the affirmative. Thus the record completely contradicts the defendant's postconviction allegation that he was not informed of the MSR requirement. The record establishes that the circuit court showed great solicitude when admonishing the defendant, ensuring that he fully understood the consequences of his guilty plea, including the MSR term. See *Boykin*, 395 U.S. at 243-44. By virtue of the court's diligence in admonishing the defendant prior to accepting his guilty plea, due process was honored. See, *e.g.*, *People v. Whitfield*, 217 Ill. 2d 177, 194-95 (2005).

¶ 23    The defendant also alleged that the statutory MSR scheme ran afoul of due process because it allowed for the reincarceration of a criminal defendant who violated an MSR rule, without benefit of a trial by judge or jury; that the MSR term had deprived him of the benefit of his plea bargain; and that his two sentences, *i.e.*, a prison sentence imposed by the circuit court and an MSR term imposed by the Prisoner Review Board, ran afoul of the constitutional prohibition against double jeopardy.

10

¶ 24 As OSAD notes in its *Finley* memorandum of law, the defendant did not set forth any legal reasoning in support of his notion that reincarcerating a convicted felon who has violated a condition of MSR, without giving him the benefit of a trial by judge or jury, somehow runs afoul of due process. Nothing in Illinois law suggests that due process demands a trial, and a finding by a judge or a jury, before a convicted felon can be reconfined in a prison due to an MSR violation. This court notes that when a convicted felon is released from a prison and begins his MSR term, he remains in the custody of the Department of Corrections until he has completed the MSR term. See, *e.g.*, *Newsome v. Hughes*, 131 Ill. App. 3d 872, 875 (1985). As for the allegation that the three-year MSR term deprived the defendant of the benefit of his plea bargain (see generally *Santobello v. New York*, 404 U.S. 257, 262 (1971), and *Whitfield*, 217 Ill. 2d at 195), this court already has noted that the defendant, at the guilty-plea hearing, personally acknowledged that a three-year MSR term, commencing after his release from prison, was a part of his plea agreement with the State. In regard to the defendant's allegation that he had two sentences—*i.e.*, a prison sentence imposed by the circuit court and an MSR term imposed by the Prisoner Review Board —for but a single criminal offense, contrary to the double-jeopardy prohibition (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10), the defendant clearly does not have two sentences, and he certainly was not sentenced by the Prisoner Review Board. The Unified Code of Corrections provides that every felony sentence that includes a term of imprisonment must also include a term of MSR. See 730 ILCS 5/5-8-1(d) (West 2014). The MSR term is not a second sentence; by operation of law, it is part of a single sentence consisting of both imprisonment and MSR. *People v. McChriston*, 2014 IL 115310, ¶ 23.

¶ 25 In short, the defendant's allegations concerning MSR plainly failed to meet the pleading requirements for *pro se* postconviction petitions. There would be no merit to an argument that

defendant's petition, with its baseless allegations about MSR sentences in general and his MSR sentence in particular, presented the gist of a constitutional claim.

¶ 26　　The second of OSAD's two potential issues in this appeal is whether the circuit court committed any procedural error in summarily dismissing the defendant's postconviction petition. The summary dismissal was based upon the court's explicit finding that the petition was frivolous or patently without merit. See 725 ILCS 5/122-2.1(a)(2) (West 2016). The record on appeal shows that the defendant placed his postconviction petition into the prison mail system on January 19, 2018, and the petition was file-stamped by the circuit clerk and docketed on January 23, 2018. The record further shows that on March 7, 2018, just 43 days after file-stamping and docketing, the circuit court entered its written order summarily dismissing the postconviction petition. The circuit court entered the order within the applicable 90-day timeframe (see *id.*), and apparently without any input from the State, and there would be no merit to an argument that the court committed procedural error in summarily dismissing the petition.

¶ 27　　　　　　　　　　　　　　　　CONCLUSION

¶ 28　　The defendant failed to meet the pleading requirements for a *pro se* postconviction petition, and the circuit court rightly dismissed the petition in compliance with postconviction procedures. Any argument to the contrary would lack merit. Accordingly, OSAD is granted leave to withdraw as the defendant's counsel on appeal, and the judgment of the circuit court is affirmed.

¶ 29　　Motion granted; judgment affirmed.