NOTICE
Decision filed 07/06/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180209-U

NO. 5-18-0209

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-423 |
| | ) | |
| DAYLON RICHARDSON, | ) | Honorable |
| | ) | Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the defendant's postconviction claims were based upon an indisputably meritless legal theory, and any argument to the contrary would be without merit, the defendant's appointed appellate counsel must be granted leave to withdraw, and the judgment of the circuit court, summarily dismissing the defendant's postconviction petition, must be affirmed.

¶ 2    Pursuant to a guilty plea, the defendant, Daylon Richardson, pleaded guilty to vehicular hijacking, and four other counts were dismissed. After a hearing, the defendant was sentenced to imprisonment for seven years and mandatory supervised release for two years. There was no motion to withdraw the plea or to reduce the sentence. Five months after sentencing, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). The circuit court summarily dismissed the petition. The defendant now appeals from the summary dismissal. His appointed attorney in this appeal, the Office of the State Appellate

1

Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD properly served the defendant with a copy of its motion and memorandum. This court gave the defendant ample opportunity to file a *pro se* response, brief, memorandum, etc., objecting to OSAD's motion or explaining why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and memorandum, and the entire record on appeal, and has determined that this appeal does indeed lack merit. Accordingly, OSAD's *Finley* motion must be granted, and the judgment of the circuit court, summarily dismissing the defendant's postconviction petition, must be affirmed.

¶ 3                                                      BACKGROUND

¶ 4      In April 2017, the defendant was charged by information with four counts. Count I charged the defendant with aggravated vehicular hijacking, accusing him of knowingly taking a motor vehicle from the person or presence of Sean Davis by the use of force or by threatening the imminent use of force while armed with a firearm. 720 ILCS 5/18-4(a)(4) (West 2016). A violation of that subsection of the aggravated-vehicular-hijacking statute is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court. *Id.* § 18-4(b). The term of imprisonment imposed by the court shall be not less than 6 years and not more than 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016). Therefore, the range of punishment for that subsection of the aggravated-vehicular-hijacking statute shall be between 21 and 45 years. Count II charged the defendant with unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2016)), a Class 2 felony. Count III charged him with aggravated unlawful use of a weapon (720 ILCS 5/24-

2

1.6(a)(1) (West 2016)), a Class 4 felony. Count IV charged him with resisting a peace officer (*id.* § 31-1(a)), a Class A misdemeanor.

¶ 5    On August 8, 2017, a fifth count as added. Count V charged the defendant with vehicular hijacking, accusing him of knowingly taking a motor vehicle from the person or presence of Sean Davis by the use of force or by threatening the imminent use of force. *Id.* § 18-3(a). Vehicular hijacking was a Class 1 felony (*id.* § 18-3(b)) with a term of imprisonment of not less than 4 years and not more than 15 years (730 ILCS 5/5-4.5-30(a) (West 2016)). This fifth count was very similar to the first count, aggravated vehicular hijacking, except that it deleted reference to a firearm, which was the aggravating factor that made that count a Class X felony with a mandatory 15-year enhancement.

¶ 6    The day the fifth count was added, the defendant, his counsel, and an assistant state's attorney appeared before the court. The defendant was 17 years old. The attorneys informed the court that the defendant would plead guilty to the fifth count, vehicular hijacking, and the original four counts would be dismissed; a presentence investigation would be performed, and the court would schedule a sentence hearing. The court proceeded to admonish the defendant as to each of the five counts and the sentences therefor. As to the fifth count in particular, vehicular hijacking, the court distinguished it from count I, aggravated vehicular hijacking, by stating that the fifth count did not include the firearm element, and the court stated that it was punishable by 4 to 15 years in prison, to be followed by 2 years of mandatory supervised release, with no possibility of parole. The defendant expressed his understanding of the counts and the possible sentences.

¶ 7    The court then began to explain the alternative to pleading guilty—going to trial. When the defendant said that he did not understand the difference between a jury trial and a bench trial, the court explained the two in detail, and the defendant then expressed his understanding. The court

3

began to address the defendant's rights at trial, including the right to right to testify or not testify, and the right to call witnesses. When the defendant said that he did not know the meaning of cross-examination, the court explained in detail. The defendant ultimately expressed his understanding of all these rights at trial, and of the State's burden to prove guilt beyond a reasonable doubt. The defendant understood that by pleading guilty to one count filed that day, in exchange for the State's promise to dismiss the four earlier counts, he was admitting his guilt and making clear that there would be no trial. He agreed that no other promises had been made, and understood that if he pleaded guilty, be could not be sentenced to probation but only to a term of imprisonment for 4 to 15 years. He denied that any threats were made in an effort to persuade him to plead guilty, and he said that he was pleading guilty because he was, in fact, guilty, and this plea agreement was beneficial to him. The assistant state's attorney recited a statement of facts in support of the plea. Essentially, on February 1, 2017, the defendant approached the complainant, Sean Davis, on a Metro Link parking lot and, by threatening the imminent use of force, took Davis's 2000 Chevrolet pick-up truck, which he drove a short distance before abandoning it.

¶ 8    The court then asked the defendant how he wished to plead to vehicular hijacking, and he answered, "Guilty." The court accepted his plea. There followed the court's findings that there was a factual basis, that the defendant understood all five of the charges and sentences he faced, that he understood that by pleading guilty he was giving up his right to trial, that no improper promises had been made, and that the plea was voluntary. The court ordered a presentence investigation (PSI) report and set a sentencing hearing.

¶ 9    The PSI noted that the defendant's parents never had married. The defendant had spent his entire life in the Metro-East area and had completed the tenth grade. A written report from a psychiatrist accompanied the PSI. Dr. Jacquelyn Hall-Davis diagnosed the defendant with bipolar

4

affective disorder type II, attention deficit hyperactivity disorder, and oppositional defiant disorder. She noted an early history of medical problems, including the absence of a right ear and a heart condition that was repaired in infancy. The defendant had been to a few schools, where he showed emotional or social problems.

¶ 10    On September 26, 2017, the court held a sentencing hearing on the count to which the defendant had pleaded guilty, vehicular hijacking. The defendant's mother, Tiffany Endicott, testified that the defendant had been born with no right ear, "four holes in his heart" and other problems, and he had always sought to portray himself as extra tough. It affected his schoolwork. Still, he mowed grass for elderly neighbors, repaired bicycles for young children, and "did a lot around the house" when the family finally got a house. Since his arrest, "he has been put on medication and there is a noticeable difference." Endicott added that she and defense counsel had discussed "boot camp" for the defendant, and the defendant's cardiologist had no medical restrictions on the defendant's activity. She presented a letter from the cardiologist.

¶ 11    The State recommended a 12-year sentence. Defense counsel suggested that "four years and boot camp" would be "an appropriate disposition." Both sides agreed that the defendant, at the time of the offense, was armed with a handgun that was not operable; it lacked a striker, sear springs, and a pin. In a statement in allocution, the defendant said that he was "sorry" for doing wrong. "When I get out," he stated, "I'm just going to turn my life around."

¶ 12    The court expressed uncertainty as to whether the defendant could get into boot camp, adding, "That will be up to you." According to the court, the defendant was neither at his "physical peek [*sic*]" nor at his "mental peek [*sic*]," having done a "stupid thing." However, it was "appropriate in this case" that the defendant have an opportunity to approach the "impact incarceration or boot comp people" and convince them that he could be "a productive part of that

5

program." The court sentenced the defendant to imprisonment for seven years and mandatory supervised release for two years, with a recommendation and approval to seek admission to the boot camp or impact incarceration program. The court made clear to the defendant that if the Department of Corrections did not accept him into the program, he would need to serve the seven years behind bars. The court admonished the defendant on his right to file a motion to withdraw the guilty plea and his right to appeal, and the defendant expressed his understanding. The court entered a written judgment of conviction on the day of the sentencing, September 26, 2017.

¶ 13    On January 24, 2018, the defendant filed a *pro se* petition for postconviction relief. He alleged that both the circuit court and his defense attorney had misinformed him that he would be considered for impact incarceration for vehicular hijacking, when in fact section 5-8-1.1 of the Unified Code of Corrections (730 ILCS 5/5-8-1.1 (West 2018)) specified that he was statutorily ineligible for impact incarceration for vehicular hijacking. This misinformation rendered his guilty plea involuntary, and made him the victim of constitutionally ineffective assistance of counsel. Furthermore, the defendant, if he had known that he was ineligible, never would have accepted the plea agreement. In an affidavit accompanying the petition, the defendant swore that he had pleaded guilty to vehicular hijacking and had been sentenced to seven years of imprisonment "with the recommendation to go to boot camp" but, upon arrival at the Illinois Department of Corrections, he was denied boot camp "due to my offense of vehicular hijacking & criminal history." He added that he never would have taken the plea "if I knew I had to do seven years instead of 120 days in the impact incarceration program."

¶ 14    On February 23, 2018, the circuit court summarily dismissed the *pro se* postconviction petition. "[The defendant] understood when he entered his guilty plea that impact incarceration

was not guaranteed." The defendant filed a notice of appeal. The circuit court appointed OSAD to represent the defendant.

¶ 15                                    ANALYSIS

¶ 16    This appeal is from the circuit court's order summarily dismissing the defendant's *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Appellate review of such an order is *de novo*. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 17    The defendant alleged in his postconviction petition that both the circuit court and his defense counsel advised him that he would be eligible for consideration for impact incarceration, when in fact he was statutorily ineligible given his offense of vehicular hijacking. As previously mentioned, the defendant's appointed attorney on appeal, OSAD, has concluded that the defendant's petition fails to state the gist of a constitutional claim, and any contrary argument would lack merit. This court agrees with OSAD's conclusion.

¶ 18    The Act provides a method by which any person imprisoned in the penitentiary may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a proceeding under the Act by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2016). "The petition shall *** clearly set forth the respects in which [the defendant's] constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2. The Act requires the circuit court to examine a defendant's postconviction petition, and enter an order thereon, within 90 days after the petition is filed and docketed. *Id.* § 122-2.1(a). A circuit court needs to determine within the 90-day

7

timeframe whether it should summarily dismiss the defendant's petition as frivolous or patently without merit (*id.* § 122-2.1(a)(2)) or should order the petition to be docketed for further consideration (see *id.* § 122-2.1(b)). The court must make that determination independently, without any additional input from the defendant, and without any input from the State. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 19     A *pro se* postconviction petition may be dismissed as frivolous or patently without merit only if its allegations, taken as true and liberally construed, fail to state the gist of a constitutional claim. *Id.* In other words, the petition may be dismissed "only if [it] has no arguable basis either in law or in fact. A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). In order to meet the "gist" standard, a defendant " 'need only present a limited amount of detail' " in his petition, and he need not make legal arguments or cite to legal authority. *People v. Delton*, 227 Ill. 2d 247, 254 (2008) (quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)). "However a 'limited amount of detail' does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *Id.*

¶ 20     Here, the defendant's petition had no arguable basis in law. It is based on an indisputably meritless legal theory.

¶ 21     The defendant alleged that the circuit court and his attorney both had misinformed him about impact incarceration. Specifically, they both assured him that he would be considered for impact incarceration for vehicular hijacking, when in fact section 5-8-1.1 of the Unified Code of Corrections (730 ILCS 5/5-8-1.1 (West 2018)) specified that he was statutorily ineligible for

8

impact incarceration for vehicular hijacking. This assertion is based upon a misreading of section 5-8-1.1

¶ 22    Subsection 5-8-1.1(a) (*id.* § 5-8-1.1(a)) states that the Department of Corrections (DOC) may establish and operate an impact incarceration program for eligible offenders, and it gives the DOC the discretion to accept an offender approved by the circuit court. Subsection 5-8-1.1(b) (*id.* § 5-8-1.1(b)) lists eight specific criteria that must be met in order for the committed person to be eligible to participate in the program. One of those eight specific criteria is that a committed person is eligible if "[t]he person has *not* been convicted of a Class X felony, first or second degree murder, armed violence, aggravated kidnapping, criminal sexual assault, aggravated criminal sexual abuse or a subsequent conviction for criminal sexual abuse, forcible detention, residential arson, place of worship arson, or arson and has not been convicted previously of any of those offenses." (Emphasis added.) *Id.* § 5-8-1.1(b)(3). In other words, a person convicted of one of those offenses is ineligible for the program.

¶ 23    Plainly, vehicular hijacking is not one of the listed offenses that makes a person ineligible for the impact incarceration program. The defendant was eligible for consideration for the program. Both the circuit court and the defense attorney rightly understood the law, and nothing that they told him made his guilty plea invalid or amounted to constitutionally ineffective assistance. It was at the discretion of the DOC that the defendant was denied admission to the program.

¶ 24                                CONCLUSION

¶ 25    The defendant's postconviction claims were based on an indisputably meritless legal theory, namely, that section 5-8-1.1 of the Unified Code of Corrections made the defendant ineligible for impact incarceration because he had been convicted of vehicular hijacking. The

9

assertion was false; the offense of vehicular hijacking did not make him ineligible. The circuit court and defense counsel rightly understood that fact and properly informed the defendant. Summary dismissal of the postconviction petition was not erroneous, and any argument to the contrary would lack merit. Accordingly, OSAD is granted leave to withdraw as counsel on appeal, and the judgment of the circuit court is affirmed.

¶ 26    Motion granted; judgment affirmed.