NOTICE
Decision filed 06/24/22. The
text of this decision may be
changed or corrected prior to
the filing of a Petition for
Rehearing or the disposition of
the same.

2022 IL App (5th) 190262-U

NO. 5-19-0262

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 17-CF-181 |
| | ) | |
| KALEB FREEMAN, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where the defendant's postconviction petition was frivolous and patently without merit, we grant appointed appellate counsel leave to withdraw and affirm the judgment of the circuit court's summary dismissal of defendant's petition.

¶ 2     Defendant, Kaleb Freeman, appeals from the summary dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). His appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)), along with a brief in support of the motion, arguing this appeal lacks arguable merit. OSAD provided defendant with a copy of its *Finley* motion and brief. This court provided defendant with ample opportunity to file a response to OSAD's motion or explain why this appeal has merit, but defendant declined the opportunity. Having examined the entire record on appeal and OSAD's *Finley* motion and brief, we conclude

1

that the instant appeal lacks merit. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      In 2017, a grand jury returned a four-count indictment against defendant. He was charged with three counts of first degree murder—intentional, knowing, and felony—and one count of armed robbery. In all four counts, defendant was alleged to have personally discharged a firearm at Montrea Marshall.

¶ 5      The count charging intentional murder was later amended by interlineation to remove any reference to a firearm. The amendment also made clear that defendant allegedly acted with an intent to kill, and not an intent to do great bodily harm.

¶ 6      On February 14, 2018, defendant, defense counsel Cheryl Whitley, and an assistant state's attorney appeared before the trial court. The assistant state's attorney announced a plea agreement, in which defendant would plead guilty to the amended count of intentional first degree murder in exchange for a sentence of 35 years' imprisonment and dismissal of the other three counts. Defense counsel and defendant concurred. In response to queries from the court, defendant stated that he was 24 years old, understood English, and was not under the influence of any drugs or alcohol. The court admonished defendant as to the nature of the amended charge of intentional first degree murder—that on January 21, 2017, without lawful justification and with the intent to kill, he caused injury to Marshall, and thereby caused his death. Defendant indicated his understanding, and that he wished to plead guilty.

¶ 7      The court proceeded to admonish defendant about the presumption of innocence, the State's burden of proof, the right to counsel, the right to demand a trial—whether by jury or by the court—and his rights at trial. Defendant indicated his understanding of all these matters. He also

2

indicated his understanding that by pleading guilty, he would waive those rights and there would not be a trial. The court admonished defendant of the possible sentence—20 to 60 years in prison, to be followed by mandatory supervised release for 3 years—and defendant indicated his understanding. The assistant state's attorney provided a factual basis, to which defense counsel stipulated. Defendant indicated that no one had forced or threatened him, and nobody made him any promises, apart from the plea agreement, to get him to plead guilty, and that he was pleading guilty freely and voluntarily. He also indicated that he had talked about the plea and its consequences with his attorney, and that he still desired to plead guilty. The court determined that defendant understood the nature of the charge, the range of sentencing, and his rights. It further determined that defendant's guilty plea was knowing and voluntary and there was a factual basis for the guilty plea. After hearing evidence in aggravation and mitigation, the court sentenced defendant to 35 years' imprisonment—in accordance with the plea agreement.

¶ 8    On March 9, 2018, defendant filed a *pro se* document captioned "motion for reduction of sentence." Despite the caption, the body of the document contained allegations like those in a motion to withdraw a guilty plea. Defendant alleged that his attorney did not want to defend him at trial, "failed to conduct her own investigation," and "did not contact witnesses for interviews." The last allegation was, "Defendant felted [*sic*] coerced to plead guilty."

¶ 9    On March 26, 2018, defendant filed a *pro se* "motion to withdraw guilty plea and vacate sentence." He alleged that his attorney did not want to defend him and did not conduct her own investigation.

¶ 10    Also, on March 26, 2018, defendant filed a notice of appeal. This court dismissed that appeal as premature under Illinois Supreme Court Rule 606(b) (eff. July 1, 2017). *People v. Freeman*, No. 5-18-0199 (2018) (unpublished order).

3

¶ 11    On June 8, 2018, the trial court entered a written order. The order denied the motion to reduce sentence, but appointed the public defender to represent defendant on his motion to withdraw guilty plea.

¶ 12    On September 4, 2018, appointed counsel filed an amended motion to withdraw guilty plea. The motion alleged that (1) defendant was denied effective assistance of counsel and (2) his plea was not voluntary due to "psychological duress and coercion."

¶ 13    On September 25, 2018, defendant, his three appointed public defenders, including Neil Hawkins, and an assistant state's attorney appeared before the trial court. The court called for a hearing on defendant's motion to withdraw guilty plea, but when the court asked Hawkins if he was ready to proceed, Hawkins suggested that defendant did not want to proceed. In response to the court's queries, defendant personally clarified that he wanted to withdraw his motion to withdraw guilty plea. The court then continued to address and to question defendant personally:

> "THE COURT:  *** You had previously filed that motion to withdraw guilty plea *pro se*.  I mean on your own. And then thereafter I appointed the Public Defender's Office. Have you had a chance to speak with the Public Defenders about your motion to withdraw guilty plea?
>
> DEFENDANT K. FREEMAN: Yes, ma'am.
>
> THE COURT: Have they been able to answer any questions that you have about what may happen if you proceed on the motion, or what happens if you choose not to proceed on the motion? Have they been able to answer those questions for you?
>
> DEFENDANT K. FREEMAN: Yes, ma'am.
>
> THE COURT:  And after discussion with your Public Defenders, is it your decision to withdraw your motion to withdraw guilty plea?

DEFENDANT K. FREEMAN: Yes, ma'am.

THE COURT: And you understand—do you understand that by withdrawing your motion to withdraw guilty plea the Court is not going to act on it? I'm not going to take any action on it. And you will serve the time that was previously negotiated and pled to in this courtroom. Do you understand that?

DEFENDANT K. FREEMAN: Yes, ma'am.

THE COURT: And this is what you want to do?

DEFENDANT K. FREEMAN: Yes, ma'am.

THE COURT: Has anyone forced you or threatened you to get you to make this decision?

DEFENDANT K. FREEMAN: No, ma'am.

THE COURT: Anyone make any promises to you to get you to make this decision?

DEFENDANT K. FREEMAN: No, ma'am.

THE COURT: You're doing this—are you doing this freely and voluntarily?

DEFENDANT K. FREEMAN: Yes, ma'am.

THE COURT: Do you have any questions for me?

DEFENDANT K. FREEMAN: No, ma'am."

The court found that defendant, after speaking with his attorneys, wanted to withdraw his motion to withdraw guilty plea, and that he was acting knowingly and voluntarily, aware that he could proceed with his motion if he wished. The court allowed defendant to withdraw his motion to withdraw guilty plea and remanded him to the custody of the Department of Corrections.

¶ 14    On March 20, 2019—nearly six months after he withdrew his motion to withdraw guilty plea—defendant mailed a verified petition for postconviction relief. This document is the subject

5

of the instant appeal. Defendant claimed that he was deprived of effective assistance of counsel where Hawkins

"lied to [defendant] about reducing time from his sentence if [defendant] withdrawed [*sic*] from the motion to withdraw his guilty plea. Also, counsel, Niel [*sic*] Hawkins, told [defendant] that he would lose if he withdrawed [*sic*] his guilty plea and attempted to proceed to trail [*sic*]. [Defendant] explained to the counsel, Niel [*sic*] Hawkins and his two 6ssistants [*sic*] who were present, that his last defense lawyer Cherly [*sic*] Whitley failed to interview witnesses on his behalf and also failed to interview the witness who was with him during the event that led to his arrest, which violated his 6th Amendment right to have witnesses in his favor and also his right to have effective assistance of counsel. Defense counsel did not believe [defendant] and proceeded to tell him that he would not win at trail [*sic*] and if he withdrawed [*sic*] from withdrawing his guilty plea, defense counsel would talk with the state's attorney about reducing time off his sentence. This strategy defense counsel Niel [*sic*] Hawkins and his two assistances [*sic*] presented influenced [defendant] to withdraw from withdrawing his guilty plea. [Defendant] did not I [*sic*] his promised time reduction. Defense counsel was ineffective."

The petition was file-stamped by the clerk of the circuit court on March 25, 2019.

¶ 15    The postconviction petition was accompanied by an affidavit from defendant, which was dated March 13, 2019. Defendant attested that on September 25, 2018, which was the day he was transported from prison to the courthouse for a proceeding on his motion to withdraw guilty plea, he met Neil Hawkins and his two assistants. At that time, defendant told them that he wanted to withdraw his guilty plea because his former attorney, Cheryl Whitley, had failed to adequately investigate his case and told him that he would lose at trial. One of Hawkins's assistants told

6

defendant that Whitley was right to take that position. The assistant "also bribed me by saying she would talk to the prosecutor and see if I could get some time reduced but only if I did not proceed with withdrawing my guilty plea and vacateing [*sic*] my sentence." Defendant agreed to abandon his attempt to withdraw his guilty plea, and Hawkins and his assistants "agreed to talk to the prosecutor about taking time off my sentence." The three attorneys talked to the prosecutor, and "the prosecutor agreed to take up to 10 years off my sentence if I decide not to continue with taking my guilty plea back and if I've been in school and staying out of trouble." He replied that he had just completed a class, and had never gotten into trouble. Hawkins directed defendant to mail him the certificate of completion for the class, and stated that two or three weeks thereafter, he would contact defendant about the sentence reduction. Defendant mailed Hawkins the class completion certificate, but he never heard back.

¶ 16    On June 10, 2019, the circuit court entered a written order summarily dismissing the petition as frivolous and patently without merit. Defendant filed a timely notice of appeal.

¶ 17                                ANALYSIS

¶ 18    This appeal is from the circuit court's summary dismissal of defendant's petition for postconviction relief. Appellate review is *de novo*. *People v. Knapp*, 2020 IL 124992, ¶ 39. On *de novo* review, this court applies the same analysis that the circuit court would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. We may affirm on any basis found in the record. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003).

¶ 19    The Act allows a criminal defendant to challenge his conviction or sentence for substantial violations of federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2018); *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A proceeding

7

begins when the defendant files a verified petition in the circuit court. 725 ILCS 5/122-1(b) (West 2018). The petition must set forth the respects in which his constitutional rights were violated. *Id.* § 122-2. The petition shall have attached thereto "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* All well-pleaded allegations are taken as true, unless they are positively rebutted by the record. *People v. Robinson*, 2020 IL 123849, ¶ 45.

¶ 20     If the circuit court finds the petition frivolous or patently without merit, the court must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018). "Frivolous or patently without merit" means the petition "has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition has no arguable basis in law or fact if it relies on "an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.* at 17.

¶ 21     In his postconviction petition and in the accompanying affidavit, defendant complained that attorney Whitley failed to properly investigate his case by failing to interview witnesses. However, such complaints cannot be heard at this point. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This general rule comes from the fact that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Id.* Thus, "a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional." *People v. Brown*, 41 Ill. 2d 503, 505 (1969). Even errors

8

or irregularities of constitutional magnitude are so waived. *People v. Townsell*, 209 Ill. 2d 543, 547-48 (2004).

¶ 22     In this case, the circuit court ensured defendant's plea was voluntary, and was not the result of force, coercion, or promises apart from the plea agreement. Also, before accepting the plea, the court diligently admonished defendant about the rights he would waive by pleading guilty. As such, the record shows that defendant entered into the guilty plea voluntarily, and he cannot now raise claims of constitutional deprivation that occurred prior to the entry of the guilty plea.

¶ 23     Defendant also contended that Hawkins and his assistants pressured him into withdrawing the motion to withdraw guilty plea by promising they "would talk with the state's attorney about reducing time off his sentence," but he "did not recieve [*sic*] his promised time reduction." At the hearing for the motion to withdraw guilty plea, however, defendant made clear that he was acting freely. He answered in the affirmative—"Yes, ma'am"—when the court asked whether the decision to withdraw the motion was his decision and whether he understood that withdrawal of the motion means he would "serve the time that was previously negotiated and pled to in this courtroom." When the court specifically asked whether anyone had forced or threatened him, or made any promises to get him, to withdraw the motion, defendant answered in the negative—"No, ma'am." As such, the allegations regarding Hawkins and his assistants are meritless because they are contradicted by the record. The circuit court therefore did not err in summarily dismissing the petiton.

¶ 24                                   CONCLUSION

¶ 25     The circuit court did not err in summarily dismissing defendant's postconviction petition. Any argument to the contrary would lack merit. Accordingly, we grant OSAD leave to withdraw as counsel and affirm the judgment of the circuit court.

9

¶ 26    Motion granted; judgment affirmed.